JANE A. BROWN *vs.* AMHERST WHITMORE, ADMINISTRATOR
OF THE ESTATE OF JOSIAH LUNT.

Cumberland.    Opinion February 16, 1880.

*Error — when not a bar.   R. S., c. 71, § 22.    Pleadings.    Judgments — what,
on plene administravit.*

When a judgment on a suit against a *non compos* has been reversed for error,
because no guardian had been appointed, such reversal constitutes no bar to
a new suit on the note after a guardian has been appointed.

By R. S., c. 71, § 22, it is the duty of the administrator to sell the real
estate of his intestate when fraudulently conveyed.

When there is the plea of *plene administravit*, and the plaintiff confesses the
plea, or pleads *plene administravit præter*, there may be judgment in his
behalf for the debt or damage, to be levied, as to the whole or part, of the
goods of the intestate, which shall afterwards come into the hands of the
administrator to be administered.

On a plea of no assets the plaintiff may pray judgment of assets, when they
shall come into the hands of the administrator.

ON REPORT.

Upon so much of the evidence as is legally admissible, the full
court are to render such judgment as the law and the evidence
warrant.

The facts appear in the opinion.

*H. Orr*, for the plaintiff, cited : R. S., c. 71, § 22 ; c. 76, §
44 ; *Rollins* v. *Mooers*, 25 Maine, 192 ; *Mechanics Bank* v.
*Hallowell*, 52 Maine, 545.

*Weston Thompson*, for the defendant.

The common law effect of *plene administravit* is to cast on
the plaintiff the burden of showing personal assets wherefrom she
might be paid.    By that law real estate cannot be reached in a
suit against an administrator; 2 Greenl. Ev. 346, 347.    This
case does not show any personal assets of defendant's intestate.

If Lunt left real estate, that fact will not aid the plaintiff.  R.
S., c. 76, § 44, does not say that plaintiff upon showing real
estate may obtain judgment.    The statute does not change
the common law rule, that plaintiff must show personal assets to
obtain judgment.

APPLETON, C. J.   On February 18th, 1856, Josiah Lunt was appointed the guardian of Jane A. Lunt, the plaintiff, then a minor, and subsequently received five hundred and seventy-five dollars and three cents, belonging to her, for which he never accounted.

On the 24th of March, 1859, Lunt conveyed the farm on which he then and afterwards lived, to his daughter Eliza, for a recited consideration of $1500, taking at the same time her note duly attested for $700, payable in six years.

The plaintiff became of age in July, 1871, and married Roscoe Brown, her husband, on May 25th, 1875.

Josiah Lunt, the plaintiff's grandfather, died in August, 1875, and the defendant was appointed the administrator on his estate.

The present suit, for money had and received, was commenced May 27th, 1878.

The defendant pleads that the said Lunt never promised, — that he has fully administered,— and that the estate was duly represented insolvent, but no commissioners have been appointed.

The defendant has settled his final account in the probate office, and it appears that there was not more than sufficient to pay the claims specially preferred by R. S., c. 66, § 1; unless the administrator is bound to account for the real estate conveyed by his intestate, to his daughter Eliza, on March 24th, 1859, or for the attested note given at that time.

The plaintiff's husband testified that Josiah Lunt gave the note to him for his wife, and that he gave it to her. If so, whether the note was a gift or turned out in payment of what he owed, it ceased to be a part of the estate of Lunt to be administered upon by the defendant.

The plaintiff sued Eliza Lunt upon her note, obtained judgment, and levied upon the real estate conveyed to her, by her father, in 1859.   This judgment was reversed on error, on the ground that Eliza was *non compos*, and had no guardian to protect her rights; but this reversal does not prevent the plaintiff's recovery on the note in a suit in which due notice is given to the guardian.

It is true, the plaintiff offered the note to the defendant which he declined to accept.   But if the statement of her hus-

band be true, that the defendant's intestate gave the note to her, — whether as a gift, or in settlement and discharge of her claim, it cannot become a part of the estate of defendant's intestate by any act of the donee. If she chose to give her property to the administrator that would not make it assets of the estate, nor was he bound to accept it as such.

If the note was wrongfully abstracted, it would remain a part of the estate of Lunt, but it is not for the plaintiff to set up that claim in contradiction of the evidence she has offered. There is, then, no proof whatever, of any personal estate upon which the defendant should have administered, but upon which he has not.

The real estate conveyed in 1859 by the defendant's intestate, to his daughter, is claimed to have been in fraud of the plaintiff's rights, and the circumstances attending the conveyance, tend to show that such was its purpose. But, if so, the estate is not shown to have been in the possession, or under the control of the defendant as any portion of the assets of the estate of his intestate.

It is a matter of inference rather than of proof, that the note was given as part consideration for the land of the defendant's intestate, conveyed on that day to the maker. If so, its enforcement and collection might well be deemed a waiver of any right to avoid the conveyance as fraudulent. If not enforced, the plaintiff would be at full liberty to contest the validity of the conveyance.

If the consideration of the note was something other than the land, the note will cease to be of any importance in the determination of this case.

R. S., c. 71, § 22, provides that the lands of a deceased, fraudulently conveyed, may be sold for the payment of debts; and if the conveyance in question be fraudulent, it would seem that the defendant would be liable on his bond, if being notified and aware of the fraud, he should refuse to make the sale which it is his duty to make. In case of a sale, the proceeds would be assets in his hands to be administered upon. It is for the defendant to make such sale.

The amount due is in controversy under the plea of *non ·assumpsit.* The replication of the plaintiff to the plea of *plene ·administravit* is not stated.   But if he confess it "or plead *plene administravit præter,* there shall be judgment in his favor ·for the debt or damages, &c., to be levied, as to the whole or ·part of the goods of the intestate, which shall ·afterwards come ·to the hands of the defendant to· be administered.   Such. judg-·ment is called a judgment of assets *quando acciderint;* but the ·execution cannot be had until the defendant shall have the goods ·of the deceased, when the plaintiff may either sue out *scire facias* ·or bring an action of debt on the judgment, suggesting a ·*devastavit.*"   Toller on Executors, 470 ; *Hindsley* v. *Russell,* 1:2 East. 232.   1 Chitty Pl. 548–558.   On a plea of no assets, ·the plaintiff may pray judgment of assets *quando acciderint.* ;*Wilson* v. *Hurst's Ex'r,* 1 Pet. 442, n.

> *The defendant to be defaulted, to be heard in damages.   Execution to issue on scire facias against the goods of the intestate, when shown to have come to the hands of the defendant.*

WALTON, PETERS, LIBBEY and SYMONDS, JJ., concurred.